THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re:  ALLEN MEAD FERGUSON and<br>MARY RUTHERFOORD FERGUSON,<br><br>                 Debtors. | Case No. 11-32141-KRH<br>Chapter 7 |
| LYNN L. TAVENNER, TRUSTEE,<br><br>                 Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL<br>ASSOCIATION,<br><br>                 Defendant. | APN 13-03067-KRH |

**<u>MEMORANDUM OPINION</u>**

Allen Mead Ferguson ("Mr. Ferguson") and Mary Rutherfoord Ferguson ("Mrs. Ferguson" and together with Mr. Ferguson, the "Debtors") filed a joint voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on March 31, 2011 (the "Petition Date"). The Debtors' Chapter 11 case was converted on June 28, 2011 to a case under Chapter 7 of the Bankruptcy Code. Lynn L. Tavenner is the duly appointed and currently acting trustee for the Chapter 7 bankruptcy estate (the "Trustee").

The Trustee timely commenced this adversary proceeding on March 29, 2013 by filing a complaint against the Defendant, Wells Fargo Bank, National Association ("Wells Fargo"), seeking the avoidance of certain transfers under 11 U.S.C. § 548 and § 55-81 of the Code of

Virginia, and seeking the recovery of such avoided transfers for the benefit of the bankruptcy estate under 11 U.S.C. § 550 (the "Complaint"). On January 31, 2014, Wells Fargo moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, contending that no material issues of fact remain in dispute and that it is entitled to judgment on the Complaint as a matter of law (the "Motion"). The Trustee filed her response in opposition to Defendant's Motion on February 26, 2014. Wells Fargo filed a reply to the Trustee's opposition on March 3, 2014.

The Court took the Motion under advisement following a hearing conducted on March 6, 2014. Finding that Mrs. Ferguson is personally liable on a Promissory Note made payable by the Debtors to Wells Fargo, and finding that the transfers of property, about which the Trustee complains, were made by Mrs. Ferguson to secure her obligation to Wells Fargo under the Promissory Note, the Court concludes that the transfers were made for reasonably equivalent value and are not avoidable. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

This Court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (O). Venue is appropriate pursuant to 28 U.S.C. § 1409.

Summary judgment "is favored as a mechanism to secure the 'just, speedy, and inexpensive determination' of a case" when the requirements of Rule 56 of the Federal Rules of Civil Procedure are met. *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1322-23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1). Summary judgment should be granted "if

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

2

the pleadings, the discovery disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The relevant inquiry on summary judgment is:

> whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. An otherwise 'properly supported motion for summary judgment' will not be defeated by the existence of merely any factual dispute, no matter how minor; rather, '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' To withstand a summary judgment motion, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial. Neither conclusory allegations, speculative scaffolding of one inference upon another, nor the production of a 'mere scintilla of evidence' in support of the nonmovant's case suffices to forestall summary judgment.

*Moody v. Arc of Howard Cnty., Inc.*, 474 F. App'x 947, 949 (4th Cir. 2012) (citations omitted).

The party moving for summary judgment bears the initial burden of showing there exists no genuine issue of material fact. *Celotex*, 477 U.S. at 322. In determining whether this showing has been made, the Court must assess all evidence in the light most favorable to the nonmoving party. *See e.g., Chabornnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979). "[O]nce the moving party has identified the absence of a genuine issue of material fact, the nonmoving party bears the burden of identifying specific facts that demonstrate the existence of a genuine issue for trial." *Hopkins v. Horizon Mgmt. Servs., Inc.*, 302 F. App'x 137, 139 (4th Cir. 2008).

The parties in this case do not dispute that, beginning sometime around 2002, a series of transactions occurred that resulted in Mr. Ferguson individually becoming indebted to Wells

3

Fargo[2] on an unsecured basis.  Mr. Ferguson's liability to Wells Fargo was evidenced over the years by a series of promissory notes, a number of which served to roll up and refinance prior existing obligations.  Mr. Ferguson used the proceeds from the loans he received exclusively for commercial purposes.

This relationship changed at the beginning of 2009 when Wells Fargo agreed to make a new unsecured loan in the amount of $655,000, but insisted that Mr. Ferguson's wife be included as a party to the transaction.  This marked the first time that Mrs. Ferguson assumed responsibility for any portion of Mr. Ferguson's debt to Wells Fargo.  On January 30, 2009, Wells Fargo placed loan proceeds of $655,000 into a joint checking account in the name of both of the Debtors (the "Joint Account").  The loan was evidenced by a promissory note dated February 2, 2009, in the original principal amount of $655,000 (the "Promissory Note").[3]  The Promissory Note specified that the loan proceeds were to be used solely for commercial purposes.[4]  Almost immediately after the loan was made, Wells Fargo debited $118,740.30 and $450,011.93 respectively from the Joint Account in order to satisfy the prior, outstanding obligations that Mr. Ferguson owed individually to Wells Fargo.  An additional $1,637.00 was withdrawn from the Joint Account for payment of a loan origination fee.  This left a balance in the Joint Account of $84,610.77, which represented the "limited additional availability" referenced in the Promissory Note.

---

[2] The transactions involved predecessor institutions to Wells Fargo including SouthTrust Bank, National Association, and Wachovia Bank, N.A.  For the purposes of this Memorandum Opinion, the Court will consider all obligations as held by the successor in interest, Wells Fargo.

[3] The Trustee places considerable emphasis on the fact that the loan was funded on the Friday preceding the Monday that the Promissory Note was executed by the Debtors.

[4] A provision of the Promissory Note clearly stated: "USE OF PROCEEDS: Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows: refinance existing lines of credit with the Bank with some limited additional availability."

4

Mrs. Ferguson testified at a deposition conducted by the parties that she had no knowledge of the Joint Account and that she never individually received any of the loan proceeds evidenced by the Promissory Note. While the monthly statements issued by Wells Fargo identify both Mr. and Mrs. Ferguson on the Joint Account, and while the Deposit Account Application was signed by both of the Debtors, indicating an election to create a joint account with survivorship, Mrs. Ferguson never wrote a single check on the Joint Account nor did she ever access any of the funds in the Joint Account. Mrs. Ferguson does not deny, however, that she executed the Promissory Note.

On June 7, 2010, Wells Fargo issued a Notice of Default and Demand for Payment (the "Notice") in connection with the Promissory Note. The Trustee stresses that the Notice was sent only to Mr. Ferguson and that no demand was ever made on Mrs. Ferguson. The Debtors, nevertheless, subsequently requested Wells Fargo to forbear from exercising its rights under the Promissory Note in order to give them an opportunity to workout repayment arrangements. Ultimately, Wells Fargo agreed to forbear in exchange for a pledge of collateral to secure the Debtors' unsecured obligation under the Promissory Note. The Debtors entered into a Forbearance Agreement with Wells Fargo on August 16, 2010 (the "Forbearance Agreement").[5] As part of the Forbearance Agreement, the Debtors granted Wells Fargo a security interest in: (1) an art collection which was to be sold at auction in Reno, Nevada, (2) all of the Debtors' bonds, securities, and intangible interests, and (3) real property located at 9 Hammock Drive, Cora, Wyoming (the "Forbearance Agreement Transfers"). Except for the artwork, all of the collateral Wells Fargo received from the Forbearance Agreement Transfers was owned exclusively by Mrs. Ferguson or held jointly by the Debtors as tenants by the entirety. The

---

[5] The Forbearance Agreement references an effective date of July 22, 2010, however, it was not executed until August 16, 2010.

Trustee alleges that the value of Mrs. Ferguson's interest in the collateral Wells Fargo received from the Forbearance Agreement Transfers was approximately $515,000. All of the collateral conveyed to Wells Fargo has now been liquidated. The proceeds realized from the liquidation of the collateral have either been applied to the repayment of the Debtors' outstanding obligation under the Promissory Note, or have been placed in escrow awaiting such application pending Court authorization.

The Complaint seeks to recover the Forbearance Agreement Transfers made by Mrs. Ferguson to Wells Fargo. The Trustee contends that Mrs. Ferguson received no consideration from Wells Fargo in exchange for the obligation she incurred on the Promissory Note. The Trustee maintains that Mrs. Ferguson conveyed property during the year immediately preceding the Petition Date to secure an obligation in exchange for which she received less than reasonably equivalent value. A trustee can avoid a transfer[6] or obligation under § 548(a)(1)(B) of the Bankruptcy Code if such transfer or obligation was

> made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily: . . .
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation and;
> >
> > (B)(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . .

11 U.S.C. § 548(a)(1). The Forbearance Agreement Transfers occurred well within the two-year statutory "look-back" period during which the Bankruptcy Code permits avoidance of suspect transactions. The Trustee argues that the Forbearance Agreement Transfers are avoidable

---

[6] The term transfer is defined in the Bankruptcy Code to mean each mode, direct or indirect, absolute or contingent, voluntary or involuntary, of disposing of or parting with property or an interest in property and specifically includes the creation of a lien. *See* 11 U.S.C. §101(54).

because Mrs. Ferguson did not receive reasonably equivalent value for them and because they rendered her insolvent.

While Wells Fargo concedes that the Forbearance Agreement Transfers occurred within the two-year period prior to the Petition Date, it counters that the transfers were made to secure antecedent debt and are therefore deemed to be on account of reasonably equivalent value. Bankruptcy Code § 548(d)(2)(A) specifically defines value to include the "securing of a present or antecedent debt of the debtor." Courts have held consistently that an antecedent indebtedness constitutes value for the granting of a security interest. *In re 550 Les Mouches Fashions, Ltd.*, 24 B.R. 509, 516 (Bankr. S.D.N.Y. 1982); *see also Anand v. Nat'l Republic Bank of Chi. (In re Anand)*, 239 B.R. 511, 517 (N.D. Ill. 1999); *In re Countdown of Conn., Inc.*, 115 B.R. 18, 21 (Bankr. D. Conn. 1990). Debtors "receive value when their delivery of property secures a present or antecedent debt of the debtor." *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 328 (Bankr. S.D.N.Y. 2001); *see also In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, n.16 (Bankr. D. Del. 2010) ("[c]ollateralizing antecedent debt constitutes 'value' and 'fair consideration'"). So long as the value of the Forbearance Agreement Transfers did not exceed the amount that Mrs. Ferguson owed to Wells Fargo, the value given for them was reasonably equivalent. *In re Applied Theory Corp.*, 330 B.R. 362, 363 (Bankr. S.D.N.Y 2005); *In re Countdown of Conn.*, 115 B.R. at 21-22.[7]

The Trustee argues that granting a lien to secure a debt for which the Debtor received no value cannot be a reasonably equivalent exchange. The Trustee urges the Court to apply a "totality of the circumstances" approach in making its determination whether the collateralization of Mrs. Ferguson's antecedent debt constitutes reasonably equivalent value.

---

[7] A secured creditor acquires an interest in the collateral only to the extent necessary to satisfy its claim. The creditor is never entitled to collect more than the amount it is owed. Thus, a high degree of equivalence generally exists between the two values. *See In re Southmark Corp.,* 138 B.R. 820, 830 (Bankr. N.D. Tex. 1992).

The Trustee suggests that the Fourth Circuit Court of Appeals adopted this approach in an unpublished opinion rendered in *Koch v. Rogers (In re Broumas)*, 1998 U.S. App. LEXIS 3070 (4th Cir. February 24, 1998) (unpublished). The court in *Koch* focused on the validity of the underling antecedent indebtedness. A deed of trust had been given to an insider of the debtor to secure the repayment of legal fees that the court ultimately found had never been incurred. In advocating the "totality of the circumstances" approach, the Trustee cited several similar cases that concern the validity of subsequently secured indebtedness.[8]

The Court rejects the argument advanced by the Trustee that, in order for an antecedent debt to qualify as reasonably equivalent value, the debtor must have received a reasonably equivalent portion of the loan proceeds resulting in the indebtedness subsequently secured. The Trustee's argument would essentially expand the two-year statutory look back period for an unlimited duration whenever the collateralization of antecedent debt is involved. While collateralization of past debt may not always automatically constitute reasonably equivalent value, scrutiny should be reserved for transactions involving exigent circumstances such as those involving suspect antecedent debt or insiders of the debtor. *See Callahan v. Osteen (In re Osteen),* 2012 U.S Dist. Lexis 150484 (2012). A transfer of an interest in property to secure antecedent debt will normally be deemed to constitute reasonably equivalent value unless there is an allegation of some exigent circumstance to overcome that presumption. *Official Comm. of Unsecured Creditors of Heilig-Meyers Co. v. Wachovia Bank, N.A. (In re Heilig-Meyers Co.)*, 297 B.R. 46 (Bankr. E.D. Va. 2003).

---

[8] *See e.g., Solomon v. Stillwater Nat'l Bank & Trust Co. (In re Solomon)*, 299 B.R. 626, 637 (10th Cir. BAP 2003); *Official Comm. of Unsecured Creditors v. Credit Suisse First Bos. (In re Exide Techns., Inc.)*, 299 B.R. 732, 748 (Bankr. D. Del. 2003). The Trustee also cites to a number of decisions that addressed the relative disparity between the original debt amount and the value of the collateral surrendered. *See Anand v. Nat'l Republic Bank (In re Anand),* 239 B.R. 511, 518 (N.D. Ill. 1999); *Bundles v. Baker (In re Bundles)*, 856 F.2d 815, 824 (7th Cir. 1988); *In re Countdown of Conn., Inc.*, 115 B.R. 18, 21-22 (Bankr. D. Conn. 1990).

The exigent circumstance raised by the Trustee to rebut the presumption in this case concerns Mrs. Ferguson's underlying liability on the Promissory Note. The Trustee claims that, as Mrs. Ferguson did not receive any of the loan proceeds evidenced by the Promissory Note, she received no value at all from Wells Fargo in exchange for the obligation she incurred. Section 548 of the Bankruptcy Code would permit a trustee to avoid an obligation incurred by a debtor on these grounds. *See* 11 U.S.C. § 548(a). However, Mrs. Ferguson executed the Promissory Note just outside of the two-year statutory avoidance period.[9] The Trustee must, therefore, rely upon the assertion of her strong-arm powers under Virginia state law in order to avoid the obligation.[10] *See* 11 U.S.C. § 544(b). *See also Shaia v. Meyer*, 206 B.R. 410 (Bankr. E.D. Va. 1997). If the Court determines that the antecedent debt is enforceable and cannot be avoided under state law, then the transfer of property to secure it cannot be avoided on the grounds that it was made for less than reasonably equivalent value.

The Trustee attacks the validity of the Promissory Note executed by Mrs. Ferguson under Virginia Code § 55-81. The Virginia voluntary conveyance statute[11] provides, in pertinent part:

> Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made. . . .

---

[9] The Promissory Note was executed by Mrs. Ferguson on February 2, 2009, and the Petition Date occurred on March 31, 2011.

[10] Virginia law is applicable in this proceeding because the parties' choice of forum provision, as set forth in the Promissory Note, so provides. Va. Code § 8.1A-301. *See Insight Holding Corp. LLC v. Sitnasuak Native Corp.*, 685 F. Supp. 2d 582 (E.D. Va. 2010); *see also Colgan Air, Inc. v. Ratheon Aircraft Co.*, 507 F.3d 270 (4th Cir. 2007); *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 645 S.E.2d 436 (2007); *Tate v. Hain*, 181 Va. 401, 25 S.E.2d 325 (1943). Furthermore, all of the transactions between the parties are alleged to have occurred in Virginia.

[11] Virginia has not adopted either the Uniform Fraudulent Conveyance Act (UFCA) or the Uniform Fraudulent Transfer Act (UFTA). Virginia fraudulent conveyance law remains modeled after the old Statute of 13 Elizabeth. Va. Code § 55-81 was enacted to defeat frauds perpetrated upon existing creditors by the marriage of an insolvent debtor, accompanied by gifts to his wife. *See Hyman v. Porter,* 37 B.R. 56 (Bankr. E.D. Va. 1984).

9

Va. Code § 55-81. The Trustee contends that Mrs. Ferguson received no consideration for her execution of the Note because the loan proceeds were used substantially to retire preexisting indebtedness owed exclusively by her husband. The Trustee alleges that Mrs. Ferguson received no part of the "limited additional availability" as the "Joint Account" into which the loan proceeds were deposited was joint in name only. Mrs. Ferguson, in fact, received none of the money.[12]

Virginia Code § 55-81, unlike § 548 of the Bankruptcy Code, has no applicability to the validity of a contracted debt. Virginia Code § 55-81 concerns the making of a "gift, conveyance, assignment, transfer, or charge" for no consideration deemed valuable at law. It does not address an obligation incurred without the receipt of adequate consideration. That subject is specifically addressed elsewhere in the Virginia Code.

The Promissory Note signed by Mrs. Ferguson is a negotiable instrument, as it is "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order." Va. Code § 8.3A-104(a). A negotiable "instrument is a 'note' if it is a promise and is a 'draft' if it is an order." Va. Code § 8.3A-104(e). Upon issuance of the Promissory Note, the instrument became binding on the parties. Va. Code § 8.3A-105. An individual who "signs [an] instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument" is deemed to be an accommodation party. Va. Code § 8.3A-419(a). An obligation incurred by an accommodation party is enforceable "whether or not the accommodation party receives consideration for the accommodation." Va. Code § 8.3A-419(b). An accommodation party may sign the instrument "as maker, drawer, acceptor, or indorser," and is obliged to pay the

---

[12] Wells Fargo disputes that Mrs. Ferguson received no consideration in exchange for making the Promissory Note.

instrument in the capacity in which the accommodation party signed. *Id*. A maker is "a person who signs or is identified in a note as a person undertaking to pay." Va. Code Ann. § 8.3A-103(a)(5). The language of the Promissory Note clearly delineates two such makers, Mr. and Mrs. Ferguson. By executing the Promissory Note, Mrs. Ferguson assumed a valid obligation to pay the instrument in her capacity as a maker. Virginia Code § 55-81 has no applicability to the transaction and cannot be used by the trustee to avoid the obligation.[13]

Finally, the Trustee cannot use an alleged violation of the Equal Credit Opportunity Act[14] ("ECOA") as a means to avoid Mrs. Ferguson's liability on the Promissory Note. Any such violation must be asserted either as a counterclaim or as a separate cause of action. *Riggs Nat'l Bank of Wash., D.C. v. Linch*, 36 F.3d 370 (4th Cir. 1994) *affirming Riggs Nat'l Bank of Wash., D.C. v. Linch*, 829 F. Supp. 163 (E.D. Va. 1993); *CMF Va. Land, L.P. v. Brinson*, 806 F. Supp. 90, 95 (E.D. Va. 1992) ("[n]owhere does the [ECOA] afford relief by way of affirmative defense"). *See also F.D.I.C. v. 32 Edwardsville Inc.*, 873 F. Supp. 1474, 1480 (D. Kan. 1995) ("ECOA does not provide for the invalidation of a guaranty as a remedy for an ECOA violation); *McPherson v. Comerica Bank*, 1993 WL 939366 (E.D. Mich. Dec. 08, 1993); *Matsco v. Clermont Ctr. for Comprehensive Dentistry, P.A.*, 509-CV-327-OC-10GRJ, 2010 WL 746709 (M.D. Fla. Mar. 02, 2010).

The Court finds as a matter of law that Mrs. Ferguson, as an accommodation party to the instrument, is liable on the Promissory Note in her capacity as a maker. The liability Mrs. Ferguson assumed when she executed the Promissory Note created a valid antecedent debt that

---

[13] Even if Va. Code §55-81could somehow be construed to apply to obligations, the more specific language employed by Va. Code § 8.3A-419 would have to override the more general provisions contained in Va. Code §55-81. *Nish v. Cohen*, 247 F.3d 197 (4th Cir. 2001); *Sigmon Coal Co. v. Apfel*, 226 F.3d 291 (4th Cir. 2000); *Daniels v. Warden of the Red Onion State Prison*, 266 Va. 399, 588 S.E.2d 382 (2003); *Harrison County Comm'n v. Harrison County Assessor,* 222 W. Va. 25, 658 S.E.2d 555 (2008) (when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails).

[14] 15 U.S.C. § 1691(a).

the Trustee cannot avoid either under the Bankruptcy Code or under Virginia law. As the Forbearance Agreement Transfers made by Mrs. Ferguson to Wells Fargo were given to secure a valid, non-avoidable antecedent debt, Mrs. Ferguson received reasonably equivalent value for them. Accordingly, the Trustee cannot avoid the Forbearance Agreement Transfers under §548(a)(1)(B) of the Bankruptcy Code. The Court will grant the Motion and enter summary judgment in favor of Wells Fargo.

A separate order shall issue.

ENTERED:  Mar 18 2014

/s/Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on the Docket:  Mar 18 2014